# First District Court of Appeal
## State of Florida

_____

No. 1D2024-1139

_____

KATHRYN JOHNSON, Successor
Trustee of the Krippes Living
Trust dated June 1, 2006,

    Appellant,

    v.

DOMINIC JOHNSON and
CAROLINE JOHNSON,

    Appellees.

_____

On appeal from the Circuit Court for Escambia County.
Amy P. Brodersen, Judge.

May 7, 2025

BILBREY, J.

Appellant asks us to reverse the trial court's order granting summary final judgment for Appellees and reforming two deeds. Finding no error, we affirm.

In 2006, James and Harriet Krippes, husband and wife, executed a joint trust agreement and created the Krippes Living Trust. The two parcels of real property in Escambia County, Florida at issue were then deeded to the trust.

James and Harriet Krippes were the parents of Appellant Kathryn Johnson and the grandparents of Kathryn's children, Appellees Dominic and Caroline Johnson. In 2016, Dominic moved in with the Krippes. Dominic submitted an affidavit in support of summary judgment stating that he moved in at his grandparent's request to assist with day-to-day activities.[1] In the affidavit, Dominic also stated that in 2017 his grandparents told him that if he continued to live with and assist them, they would leave the two properties to him and his sister Caroline.

In early 2018, Harriett died leaving James as the sole trustee of the trust. Two months later at his grandfather's request, Dominic called an attorney in Pensacola to help effect the agreement to transfer the properties. Although James and Dominic were relying on the attorney's expertise, in getting the property descriptions to prepare the deeds the attorney did not discover that the properties were held by the trust and not by James individually.

The attorney prepared enhanced life estate deeds, also known as Lady Bird deeds, for both properties. In these deeds James "as an un-remarried widower" purported to convey both properties to Dominic and Caroline while reserving a life estate and retaining control over the properties. The deeds recited that consideration was "ten dollars ($10.00) and other good and valuable considerations, the receipt of which is hereby acknowledged." The deeds were recorded in the official records of Escambia County two weeks after execution.

In 2020 James died. Later that year, Kathryn, as successor trustee of the trust, sued to eject Dominic and Caroline from both the properties. Dominic and Caroline counterclaimed seeking reformation of the deeds to the two properties based on mutual

---

[1] Kathryn Johnson filed an affidavit claiming that Dominic moved in to save money for his education and provided minimal support. At the summary judgment hearing, Kathryn's counsel stated that there were at least six issues of disputed fact, but for the purposes of the cross motions for summary judgment the disputed issues were not material.

mistake by the parties to the 2018 deeds. After litigation, both sides moved for summary final judgment contending that no factual issues were disputed and that they were entitled to judgment as a matter of law.

The trial court granted summary final judgment for Dominic and Caroline and reformed the deeds to both properties based on mutual mistake. The reformation changed the grantor for both deeds from James individually to "James A. Krippes, Trustee of the Krippes Living Trust dated June 1, 2006." Based on Dominic and Caroline having title to both properties, the trial court granted summary judgment against Kathryn on her ejectment claim. Kathryn then brought this appeal.

We apply a de novo standard of review to an order granting summary judgment. *Garcia v. S. Cleaning Serv., Inc.*, 360 So. 3d 1209, 1211 (Fla. 1st DCA 2023). Additionally, "[q]uestions of law and the application of legal principles to settled facts are 'subject to de novo review.'" *Allstate Fire & Cas. Ins. v. Castro*, 351 So. 3d 127, 130 (Fla. 1st DCA 2022) (quoting *Johnson v. Omega Ins.*, 200 So. 3d 1207, 1213 (Fla. 2016)).

"Reformation must be grounded on fraud, inequitable conduct, accident, inadvertence or mistake. When mistake is alleged it must be the same mutual mistake by all the parties to the document." *Hardaway Timber Co. v. Hansford*, 245 So. 2d 911, 913 (Fla. 1st DCA 1971) (citation omitted). "The equitable remedy of reformation is available where, due to mutual mistake, the written instrument does not accurately express the true intention or agreement of the parties . . . . The principle is applicable to instruments of conveyance of real property as well as to contracts." *Ayers v. Thompson*, 536 So. 2d 1151, 1154 (Fla. 1st DCA 1988) (citations omitted); *see also Providence Square Ass'n v. Biancardi*, 507 So. 2d 1366, 1369 (Fla. 1987).[2]

---

[2] Reformation cannot occur if there is a bona fide purchaser for value without notice of the mistake. *Sanders v. Thomas*, 821 So. 2d 1214, 1216 (Fla. 1st DCA 2002); *Burleson v. Brogdon*, 364 So. 2d 491, 494 (Fla. 1st DCA 1978). But this exception does not apply here.

As the trial court correctly stated in granting summary judgment:

In Florida, "[c]ourts have the power to reform a written instrument where a mutual mistake has been made and the instrument does not accurately express the true intention or agreement of the parties." *Harkless v. Laubham*, 278 So 3d 728, 737 (Fla. 2d DCA 2019) (citing *Fed. Ins. Co. v. Donovan Indus., Inc.*, 75 So 3d 812, 814–15 (Fla. 2d DCA 2011); *Circle Mortg. Corp. v. Kline*, 645 So 2d 75, 77–78 (Fla 4th DCA 1994)). "A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." *Id.* (quoting *Kline*, 645 So 2d at 77–78). "The rationale for reformation is that a court sitting in equity does not alter the parties' agreement, but allows the defective instrument to be corrected to reflect the true terms of the agreement the parties actually reached." *Kline*, 645 So 2d at 78. "Although ordinarily a writing will be looked to as the only expression of the parties' intent, in a reformation action in equity, parol evidence is admissible to demonstrate that the true intent was other than as expressed in the writing." *Id.*

The trial court appropriately considered parol evidence to effect the parties' intent. *See Providence Square*, 507 So. 2d at 1371. It is undisputed that James, Dominic, and Caroline were mistaken, and all made the same mistake in believing that James could convey the property as an individual. The parties sought legal advice to transfer the properties, and because of misadvice by the attorney, the deeds signed by James did not fulfill their agreement.[3] *See Meadows v. Citicorp Leasing, Inc.*, 511 So. 2d 622,

---

[3] The only other explanation would be that James intentionally deceived his grandchildren by purposely conveying the properties individually, knowing that the conveyance was of no effect since the properties were in fact held in trust. There was no evidence of such an unlikely, nefarious scheme by James to

4

623 (Fla. 5th DCA 1987) (reforming deed where property was not conveyed in accordance with the grantor's intentions because of attorney error).

Importantly, James retained the ability in the trust documents to transfer the two properties as trustee. *See* § 689.06, Fla. Stat. (titled "[h]ow trust estate conveyed").[4] "In a trust relationship, the trust beneficiary possesses an equitable ownership in the trust property, while the trustee possesses legal title to the property." *Imagine Ins. Co. v. State ex rel. Dep't of Fin. Servs.*, 999 So. 2d 693, 700 (Fla. 1st DCA 2008) (quoting *Brevard Cnty. v. Ramsey*, 658 So. 2d 1190, 1196 (Fla. 5th DCA 1995)).[5] If the deeds had been prepared for James to sign as trustee rather than individually, then the parties' intention would have been carried out. "Reformation, at its essence, acts to correct an error not in the parties' agreement but in the writing which constitutes the embodiment of that agreement." *Smith v. Royal Auto. Grp.*, 675 So. 2d 144, 150 (Fla. 5th DCA 1996).

In seeking to overturn the grant of summary judgment, Kathryn first points to *Aronson v. Aronson*, 930 So. 2d 766 (Fla. 3d DCA 2006). In *Aronson*, after creating a trust and putting real property in the trust, the trustee attempted to convey the same

mislead Dominic into caring for him and Harriett without compensation contrary to their agreement.

[4] Furthermore, "the statute of frauds does not constitute a bar in a proceeding seeking reformation." *Gennaro v. Leeper*, 313 So. 2d 70, 72 (Fla. 2d DCA 1975) (citation omitted).

[5] That James held legal title to the properties as trustee distinguishes this case from *Chanrai Investments, Inc. v. Clement*, 566 So. 2d 838 (Fla. 5th DCA 1990). There, the court upheld the trial court's denial of reformation that sought to change the grantor from an individual shareholder in a closely held corporation to the corporation itself. *Id.* at 840. The denial of reformation was upheld in part because "[t]he individual stockholder has neither legal nor equitable title to the property." *Id.* at 839.

5

property to his wife "in his individual capacity as 'a married man.'" *Id.* at 766. The beneficiaries of the trust sought a declaratory judgment to invalidate the second conveyance, made individually and not as trustee. *Id.* at 766–67. The court stated, "Once the Settlor held the property as trustee, for the benefit of the beneficiaries of the trust, he no longer possessed the power to convey the property in his individual capacity." *Id.* at 767.

*Aronson* is distinguishable. While this general rule — that a trustee cannot convey property held in trust as an individual — is no doubt true, *Aronson* did not involve a claim for reformation of a deed. Additionally, in *Aronson* "the trial court granted Appellants' motion in limine to bar evidence at trial seeking to prove the Settlor's intent in the execution of" the second deed. *Id.* at 767. This is unlike a reformation claim where "parol evidence is admissible for the purpose of demonstrating that the true intent of the parties was something other than that expressed in the written instrument." *Providence Square*, 507 So. 2d at 1371 (citations omitted).

Kathryn next argues that in addition to the likely negligence of the attorney who prepared the deeds, James and Dominic were also negligent and that their negligence precludes reformation. She argues that James should have remembered that he put the two properties into trust, and Dominic could have easily determined via an internet search that the James held the properties as trustee and not individually.

Nevertheless, while either James or Dominic could have engaged in further due diligence beyond consulting an attorney, even if they were simply negligent that would not be enough to defeat reformation based on mutual mistake. *See, e.g.*, *Maryland Cas. Co. v. Krasnek*, 174 So. 2d 541, 543 (Fla. 1965) ("No doubt there was some degree of negligence involved here. But, after all, mistakes do not ordinarily result from the exercise of due care."). More than simple negligence is required to preclude reformation. *See Goodall v. Whispering Woods Cntr., L.L.C.*, 990 So. 2d 695, 701 (Fla. 4th DCA 2008) (citing *Cont'l Cas. Co. v. City of Ocala*, 149 So. 381, 386 (1933)) (holding that only conduct raising to the level of gross negligence, not merely simple negligence, is enough to stop a party "from obtaining reformation from a court of equity"). Any

6

lack of due diligence by the parties to the deeds did not rise to the level of gross negligence, so their negligence cannot be a basis to overturn the reformation of the deeds.

Kathryn next argues that there can be no reformation based on mutual mistake since there was no consideration for the deeds. She is correct that "where a deed is given gratuitously and thereby constitutes a unilateral act on the part of the grantor, or where the only consideration is 'love and affection' rather than material value, equity will not decree reformation on the ground of mistake." *Providence Square*, 507 So. 2d at 1370 (citations omitted). But here the deeds each recite the payment and receipt of ten dollars. "The rule is that any consideration which will support a deed is sufficient for the purpose of reformation. For example, it has been held that a deed stating a consideration of $1.00 and other valuable consideration is sufficient as a recital of valuable consideration." *Burleson*, 364 So. 2d at 494 (citation omitted). Dominic's provision of household services to his grandparents also provided consideration for the deeds. *See Regero v. Daugherty*, 69 So. 2d 178, 181 (Fla. 1953); *Kelly v. Threlkeld*, 193 So. 2d 7, 9 (Fla. 4th DCA 1966) ("[S]ervices rendered by the grantee to the grantor, likewise, is a sufficient consideration to support an action to reform."). Accordingly, the deeds here were not gratuitous transfers ineligible for reformation.

Finally, summary judgment was properly granted against Kathryn on her ejectment claim. For Kathryn to have been entitled to eject Dominic and Caroline from the two properties, she had to show "a superior right to possession." § 66.021(1), Fla. Stat. Since the deeds were reformed, Kathryn as trustee had no title to the properties and ejectment was properly denied.

Because the trial court appropriately reformed the deeds, the grant of summary final judgment for Dominic and Caroline is

AFFIRMED.

OSTERHAUS, C.J., and ROBERTS, J., concur.

7

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---

Jessica L. Scholl of Moore, Hill & Westmoreland, P.A., Pensacola, for Appellant.

Terrie L. Didier and Marcus A. Huff of Beggs & Lane, RLLP, Pensacola, for Appellees.